**JoAnn White MOONEY, Individually and as Guardian and Next Friend of Alexander Findlay Martin Mooney, a Minor,**

v.

**Joe SNEED, et al.**

Supreme Court of Tennessee,
at Jackson.

Oct. 13, 2000.

David A. King and E. Todd, Presnell, Nashville, TN, and Buckner Wellford and Michael E. Keeney, Memphis, TN, for the appellants, Joe Sneed and Glen Atkinson.

Gary K. Smith and Bryant C. Witt, Memphis, TN, for the appellee, Joann White Mooney.

John C. Duffy and Nathan D. Rowell, Knoxville, TN, for Amicus Curiae, Tennessee Municipal League Risk Management Pool.

## OPINION

ANDERSON, C.J., delivered the opinion of the court, in which DROWOTA, BIRCH, HOLDER, and BARKER, JJ., joined.

We granted this appeal to determine whether an emergency medical technician is a "health care practitioner" within the meaning of Tenn. Code Ann. § 29-20-310(b) (Supp. 1999) and is therefore not entitled to immunity from liability under the Tennessee Governmental Tort Liability Act. We conclude that the appellant emergency medical technicians are "health care practitioners" and are not entitled to immunity. We therefore affirm the judgment of the Court of Appeals.

On June 12, 1993, the minor plaintiff, Alexander Mooney, was a passenger in a 1984 Buick Electra driven by Andrew Olney, which was involved in a one-car accident on Poplar Avenue in Memphis, Tennessee. Mooney sustained head injuries as a result of the accident. The defendants, Joe Sneed and Glen Atkinson, emergency medical technicians ("EMTs")[1] who were employed by the City of Memphis, were dispatched to the accident scene. Both defendants provided emergency medical services to Mooney at the scene of the accident and thereafter transported him to the Regional Medical Center in Memphis.

On June 10, 1994, JoAnn White Mooney filed a complaint individually and as Mooney's guardian and next friend against the City of Memphis, the two defendant-EMTs, and "John Doe," who was allegedly responsible for training the two EMTs.[2] The plaintiffs alleged that the EMTs negligently intubated Mooney by placing the endotracheal tube into his esophagus instead of his trachea, causing oxygen deprivation during his transport to the hospital and thereby exacerbating his injuries.

The defendant-EMTs filed a motion for summary judgment asserting that they are immune from suit under the Tennessee Governmental Tort Liability Act ("GTLA"), Tenn.Code Ann. § 29-20-310(b) (Supp.1999), which establishes government employee immunity for negligent acts except in "medical malpractice actions against health care practitioners."

The trial court granted summary judgment to the defendant-EMTs, concluding that emergency medical technicians are not "health care practitioners" under the GTLA and are thus immune from suit.[3]

Reversing the trial court's judgment, the Court of Appeals held that the EMTs are "health care practitioners" and are not immune from suit. We granted the defendants' application for permission to appeal to determine whether EMTs are "health care practitioners" within the meaning of Tenn.Code Ann. § 29–20–310(b) (Supp. 1999).

## STANDARD OF REVIEW

In this case, the trial court granted summary judgment to the defendant-EMTs. Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.04; see also Bain v. Wells, 936 S.W.2d 618, 622 (Tenn.1997). The court must consider the evidence and all reasonable inferences from the evidence

---

1. Sneed and Atkinson were licensed as emergency medical technicians-paramedics.

2. The plaintiff filed a separate lawsuit against Andrew Olney, the teenaged driver of the car, and his parents.

3. The trial court also dismissed the John Doe defendant. The lawsuit against the City of Memphis is still pending in the trial court.

in a light most favorable to the non-moving party. *Rice v. Sabir,* 979 S.W.2d 305, 309 (Tenn.1998).

■ On appeal, the review of a trial court's grant of a summary judgment presents a question of law. Review is *de novo,* with no presumption of correctness afforded to the trial court's determination. *Bain,* 936 S.W.2d at 622.

## GOVERNMENTAL TORT LIABILITY ACT

Our analysis begins with the proposition that the City of Memphis, as a governmental entity, is generally immune from suit for any injury resulting from its tortious actions, except in those instances in which immunity is expressly removed by the GTLA. *See* Tenn.Code Ann. § 29–20–201(a) (Supp.1999); *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 14 (Tenn. 1997). One such instance of express removal under the GTLA is the removal of governmental immunity for injury proximately caused by a negligent act or omission of a governmental employee, except under certain circumstances. Tenn.Code Ann. § 29–20–205 (Supp.1999). Even where governmental immunity is removed by statute, governmental employees are generally immune from individual liability. Tenn.Code Ann. § 29–20–310(b) (Supp. 1999). However, there is a statutory exception to this immunity from individual liability for governmental employees. The exception in the statute reads:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is *one for medical malpractice brought against a health care practitioner. ...*

Tenn.Code Ann. § 29–20–310(b) (Supp. 1999) (emphasis added).

Relying upon the foregoing statutory language, the defendant-EMTs argue that they are immune from suit because they are not health care practitioners. The plaintiff contends, on the other hand, that the defendant-EMTs are not immune from suit because § 29–20–310(b) (Supp.1999) expressly authorizes a claim "for medical malpractice brought against ... health care practitioner[s]" and EMTs are health care practitioners thus subject to individual liability.

## HEALTH CARE PRACTITIONER

■ In order to resolve the issue, our task is one of statutory construction. We must interpret Tenn.Code Ann. § 29–20–310(b) (Supp .1999) to determine whether EMTs are included within the language "health care practitioner[s]." To aid us in our work, there are a number of principles of statutory construction, among which is the most basic rule of statutory construction: " 'to ascertain and give effect to the intention and purpose of the legislature.' " *Gleaves v. Checker Cab Transit Corp., Inc.,* 15 S.W.3d 799, 802 (Tenn.2000) (quoting *Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue,* 865 S.W.2d 1, 2 (Tenn.1993)). However, the court must ascertain the intent "without unduly restricting or expanding the statute's coverage beyond its intended scope." *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). *See also Gleaves,* 15 S.W.3d at 802; *Worley v. Weigels, Inc.,* 919 S.W.2d 589, 593 (Tenn.1996); *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." *State v. Blackstock,* 19 S.W.3d 200, 210 (Tenn.2000) (citing *State v. Pettus,* 986 S.W.2d 540, 544 (Tenn.1999)).

■ Courts are not authorized "to alter or amend a statute." *Gleaves,* 15 S.W.3d at 803. The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature. *Id.* (citing *BellSouth Telecomm.,*

*Inc. v. Greer,* 972 S.W.2d 663, 673 (Tenn. Ct.App.1997)). "[C]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.' " *Id.* (quoting *BellSouth Telecomm., Inc.,* 972 S.W.2d at 673).

■ When the foregoing principles of statutory construction are applied to the language of Tenn.Code Ann. § 29–20–310(b) (Supp.1999), we have no difficulty concluding that EMTs are health care practitioners.

EMTs are licensed under the Emergency Medical Services Act of 1983. Tenn. Code Ann. §§ 68–140–501 to 68–140–522 (1996 & Supp.1999). Under the Act, an EMT is defined as "an individual licensed to practice emergency medical care." Tenn.Code Ann. 68–140–502(12) (Supp. 1999). An emergency medical technician-paramedic ("EMT P") is defined as "an individual licensed to practice advanced emergency medical care." Tenn.Code Ann. § 68–140–502(13) (Supp.1999). "Emergency medical services" are defined as those "services utilized in responding to the perceived need for immediate medical care in order to prevent loss of life or aggravation of illness or injury." Tenn. Code Ann. § 68–140–502(11) (Supp.1999).

Applying the foregoing statutes to the facts in this case, the defendant EMTs were licensed under this Act. The proof shows that the two defendant-EMTs had received specialized training to become licensed as emergency medical technicians and that they provided specialized medical care to Mooney based upon their training. The defendant-EMTs testified that they went to the accident scene and assessed the injuries the patient had and then began treating him until the time he was released to the hospital.

Because the defendants were licensed as emergency medical technician-paramedics under this Act, they were by definition "practic[ing] advanced emergency medical care." Thus, they were clearly health care practitioners.

In so holding, although we agree with the Court of Appeals' result, we decline to adopt the definition adopted in *Todd v. Weakley County,* No. 02A01–9708–CV–00197, 1998 WL 395172 (Tenn.Ct.App., filed July 16, 1998)[4], which defines health care practitioners as those licensed by Title 63 of Tennessee Code Annotated. The legislature did not elect to define health care practitioners by those professions governed by Title 63, although it easily could have done so.

We view the *Todd* definition as both too broad and too narrow. By defining "health care practitioner" to be "one who is engaged in the exercise or employment of a health care vocation or occupation ... which requires licensure or certification under the provisions of Title 63," the *Todd* definition includes: podiatrists; chiropractors; dentists; physicians; nurses; optometrists; osteopathic physicians; pharmacists; psychologists; veterinarians; occupational and physical therapists; dispensing opticians; nursing home administrators; communication disorder specialists (speech pathologists & audiologists and hearing instrument specialists); massage therapists; physician assistants; professional counselors, marital and family therapists, and clinical pastoral therapists; social workers; athletic trainers; dieticians & nutritionists; electrologists; respiratory care practitioners; and clinical perfusionists. *See* Tenn.Code Ann. §§ 63–1–101—63–28–118 (1997 & Supp. 1999).

This case does not require us to decide which of these occupations are health care practitioners for purposes of the Governmental Tort Liability Act. However, we note that Tenn.Code Ann. § 29–20–310(b) (Supp.1999) only applies to claims "for medical malpractice brought against a health care practitioner"; consequently,

4. None of the parties in *Todd* filed an application for permission to appeal to this Court, so this Court did not have the opportunity to consider the issue.

the term "health care practitioner" must be construed in the context of those individuals who are subject to being sued for medical malpractice.[5] Because the *Todd* definition includes all health care practitioners who are licensed under Title 63, some of whom cannot be sued for medical malpractice, that definition is too broad.

The *Todd* definition is also too narrow. By defining "health care practitioner" as those practitioners licensed pursuant to Title 63, the definition omits any health care practitioners who are licensed under a separate title, specifically EMTs, who are licensed under Title 68. As we have concluded above, EMTs are clearly health care practitioners for purposes of the GTLA.

We likewise decline to adopt the definition urged by the defendant-EMTs. They would have us construe "health care practitioner" to mean only those individuals who practice medicine, i.e., licensed physicians. We believe, however, that the EMTs at issue in this case are engaged in the exercise of the profession of providing emergency medical services and, thus, are "health care practitioners." If the legislature had intended to limit the exception to licensed physicians, it clearly could have done so. Since it did not do so, we must conclude that the definition includes others who provide specialized medical care to patients.

Finally, the defendant-EMTs argue that public policy supports the providing of immunity to government employees who provide emergency medical services. They assert that Tennessee is the only state to specifically impose unlimited, personal liability upon emergency medical technicians. Furthermore, they assert that a decision that EMTs are "health care practitioners" will subject low-salaried government employees to unlimited liability and will limit the delivery of emergency services to the public. These public policy arguments are persuasive, but they must be made to the General Assembly. It is not the function of this Court to substitute its own policy judgments for those of the legislature. *See Gleaves,* 15 S.W.3d at 803.[6]

### CONCLUSION

We conclude that the defendant-EMTs are "health care practitioners" within the meaning of Tenn.Code Ann. § 29–20–310(b) (Supp.1999) and that they are not protected by the immunity provisions of the GTLA. The judgment of the Court of Appeals is affirmed on the separate grounds stated. The trial court's grant of a summary judgment is reversed, and the case is remanded to the trial court for further proceedings. Costs are assessed against the defendant-appellants Sneed and Atkinson and their surety, for which execution may issue if necessary.

---

5. Prior to its repeal, Tenn.Code Ann. § 29–26–102(4) (1980) defined "health care provider" for purposes of the Medical Malpractice Review Board and Claims Act of 1975: " 'Health care provider' includes but is not limited to physicians (including osteopaths), dentists, clinical psychologists, pharmacists, optometrists, podiatrists, registered nurses, physicians' assistants, chiropractors, physical therapists, nurse anesthetists, *emergency medical technicians,* hospitals, nursing homes and extended care facilities." (Emphasis added.) While this statutory definition was repealed (1985 Tenn.Pub.Acts ch. 184), we include it here to illustrate the types of health care practitioners who historically have been subject to suit for medical malpractice.

6. We likewise decline to adopt qualified immunity for the defendants as urged in their brief and at oral argument. In cases in which the governmental entity is immune from liability, the legislature has specifically excepted medical malpractice acts or omissions committed by "health care practitioners" from the limited liability afforded other government employees when performing acts which are not willful, malicious, criminal, or performed for personal financial gain. Tenn.Code Ann. § 29–20–310(c) (Supp.1999).